## LEWIS v. MERRITT, CHAPMAN, & SCOTT CORPORATION.

(District Court, E. D. New York. November 25, 1924.)

No. 1350.

1. Patents �köm328—Lewis, 1,152,326, for apparatus for laying submarine pipe, held valid, but not infringed.

The Lewis patent, No. 1,152,326, for apparatus for laying submarine pipe, *held* valid but for a combination of elements, most of which were old, and limited by the prior art, and the proceedings in the Patent Office; also, *held* not infringed by an apparatus which lacks some essential element of each claim.

2. Patents ⊝178—Patentee cannot claim as equivalent something claimed and rejected.

A patentee, though entitled to equivalents, cannot broaden the allowed claims of the patent by claiming as an equivalent anything that was rejected.

In Equity. Suit by Thomas A. Lewis against the Merritt, Chapman & Scott Corporation. Decree for defendant.

Dutton & Kilsheimer, of New York City (James B. Kilsheimer, Jr., and Lawrence Bristol, both of New York City, of counsel), for plaintiff.

Emery, Booth, Janney & Varney, of New York City (Lucius E. Varney and Manvel Whittemore, both of New York City, of counsel), for defendant.

CAMPBELL, District Judge. This is an action in equity brought by the plaintiff to recover from the defendant for damages for the alleged infringement of patent No. 1,152,326, issued by the United States Patent Office to the plaintiff, dated August 31, 1915, and to restrain the defendant by injunction from further alleged infringement.

[1] The ownership of the patent by plaintiff is admitted, but the defendant has answered raising the twofold issue of invalidity and noninfringement.

The plaintiff bases the action at bar on all nine claims of the patent in suit, which read as follows:

"1. In apparatus for the purpose set forth, in combination, a floating support, a launchway and spring means between said support and said launchway for permitting the former to rise and fall to a greater degree than the latter.

"2. In apparatus for the purpose set forth, in combination, a floating support, a launchway, a yieldable connection between said support and launchway for permitting the former to rise and fall to a greater degree than the latter, and means for rendering said connection substantially unyielding to insure equal advancement of said support and launchway.

"3. In apparatus for the purpose set forth, in combination, a floating vessel, a trussed metal launchway, a resilient pivotal connection between said elements including a plurality of cushioning springs interposed therebetween, and means to render said connection unyielding while permitting relative pivotal movement.

"4. In apparatus for the purpose set forth, in combination, a floating vessel, a trussed metal launchway, spring means connecting said support and said launchway for permitting the former to rise and fall to a degree greater than the latter and a buoyancy tank secured to said launchway.

"5. In apparatus for the purpose set forth, in combination, a floating vessel, a launchway, spring means for attaching said launchway to said vessel, a submerged buoyancy tank secured to said launchway and means to control the buoyancy of said tank.

"6. In apparatus for the purpose set forth, in combination, a floating vessel, a launchway pivotally connected at one end to said vessel, and a supporting connection including resilient means between said vessel and a medial submerged portion of said launchway.

"7. In apparatus for the purpose set forth, in combination, a floating vessel, a trussed metal launchway pivotally attached thereto, a sling for supporting said launchway remote from the attachment of the latter to said vessel, said sling including spring means and a buoyancy tank carried by said launchway to relieve said sling.

"8. In apparatus for the purpose set forth, in combination, a floating vessel, a curvilinear launchway suspended therefrom and provided adjacent its submerged end with a scraper, and a buoyancy tank secured to said launchway and tending to regulate the action of said scraper.

"9. In apparatus for the purpose set forth, in combination, a floating support, a reinforced launchway having its major length submerged to guide a pipe line from said support, and a plurality of spaced cushioning connections between said support and said launchway to substantially free the latter from vibrations of the former caused by water fluctuations."

Two siphons have been laid across the Narrows between Brooklyn and Staten Island. The first was laid during 1914 and 1915, by Merritt & Chapman Derrick & Wrecking Company, the predecessor of the present defendant. The second was laid by the defendant in 1923.

This plaintiff brought suit against the Merritt & Chapman Derrick & Wrecking Company, which laid siphon No. 1, which action was dismissed; the pipe-laying operation complained of having been completed before the plaintiff's patent issued. There has therefore been no adjudication of the patent.

In order to determine the proper construction of the claims of the patent in suit, we will first consider the prior art; all the patents offered being United States patents.

Patent No. 39,691, issued to J. F. Ward, dated August 25, 1863, for improvement in pipe couplings.

Patent No. 111,498, issued to J. F. Ward, dated January 31, 1891, for improvement in the modes of laying pipes across rivers, discloses a curved launchway, therein called a "cradle," supported by chains from the barges, with its forward end above water and its rear end resting upon the water bed. The former use of the plan in laying a line of 36-inch pipe across the Hackensack river, and its then being used in laying a line of 36-inch pipe across the Schuylkill river at Philadelphia, are set forth by the patentee in the patent. The principal elements of the patent in suit, except springs and scraper, are disclosed in said patent.

Patent No. 293,932, issued to H. B. Angell, dated February 19, 1884, for dredger, discloses a barge on which is mounted suitable machinery, with a frame or ladder hinged to one end extending down into the water and carrying at its lower end suitable excavating instruments. The position of the lower end of the ladder is controlled by indicated cables, and a hollow float is attached near the lower end of the ladder to assist in raising it, and to prevent too great weight upon the excavation or suspending chains. This float might well be called a "buoyancy tank."

Patent No. 661,193, issued to W. W. Priestley, dated November 6, 1900, for subaqueous dredger, discloses a sealed buoyancy chamber placed around the main pipe to sustain a portion of the weight.

The following patents disclose a spring or springs used to form a yieldable connection in mooring or anchoring vessels:

Patent No. 721,465, issued to R. C. Reavley, dated February 24, 1903, for hawser attachment for vessels, and

Patent No. 730,009, issued to W. A. Duncanson, dated June 2, 1903, for anchor.

Patent No. 869,130, issued to F. A. Bierie, dated October 22, 1907, for yielding boat cleat.

Patent No. 957,315, issued to W. A. Duncanson, dated May 10, 1910, for surge-reliever or safety device for tow lines.

The following patents disclose submarine cable-laying apparatus including a plow or scraping device which may prepare a trench to receive the cable by being drawn behind the vessel:

Patent No. 734,615, issued to B. Roberts, dated July 28, 1903, for submarine cable-laying device.

Patent No. 737,021, issued to B. Roberts, dated August 25, 1903, for submarine cable-laying device.

Patent No. 815,163, issued to S. P. Hatfield, dated March 13, 1906, for apparatus for laying electric conductors.

Patent No. 883,084, issued to A. Casse, dated March 24, 1908, for apparatus for placing bed and bank coverings in waterways, discloses a cutter or scraper that may be located in the front of a rotating tilting platform pivoted in a barge to smooth the surface of the bed or bank more effectually.

Patent No. 375,464, issued to H. C. Thacher and G. H. Breymann, dated December 27, 1887, for method of and apparatus for laying submarine pipes, the meth-

od being to connect a series of pipe lengths on land by lead joints in the ordinary way, buoying the same by casks or other buoyant bodies, and placing them alongside of a scow and supporting them by cables passed through blocks attached to eyebolts at the ends of the rods, which pass through the top cross-beam of an overhanging derrick or frame near each end of the scow. The said rods extend through crossheads and are surrounded by springs so that the weight of the pipe line tends to compress the springs.

The defendant also offered in evidence the following prior publications:

"Engineering," June 9, 1871, page 398, an article containing a further disclosure of the Ward apparatus hereinbefore described in connection with patent issued to Ward, No. 111,498, together with an engraving.

Paper 747, from the "Transactions of the American Society of Civil Engineers," vol. 33, April 1895, containing a description of the apparatus designed and satisfactorily used by Franklin Riffle, in laying a submerged pipe line across the Willamette river, at Portland, Or., during the years 1893 and 1894, and a clear drawing of the same. It disclosed a floating support comprising two scows, a curved launchway of trussed construction, the forward end of which is supported upon a trunnion extending between two scows, the lower end resting upon the bottom of a trench previously prepared, a vertical threaded rod connection from the lower end of the launchway to the rear of the scows to relieve the drag upon the bottom of the trench when required. At the lower end of the launchway a hinged shoe was provided for the delivery of the pipe from the launchway to the trench bottom, so that the joints should not be greatly deflected.

"Journal of the Association of Engineering Societies," vol. 26, of 1901, page 209, containing a description of an apparatus satisfactorily used in laying a line of pipe under water across Chelsea creek, in 1900, with a drawing and a reproduction of a photograph.

There were also received in evidence photographs and a blueprint of the apparatus actually used, which included a scow, a curved trussed and braced launchway, which was hung from the scow by wire ropes. To make the launchway rest more evenly on the bottom, there was provided at the rear end thereof a wooden shoe which probably served to even off small irregularities along the bottom of the trench.

To control the location of the tail end of the launchway, tackle from the scow to the tail end of the launchway was provided.

From a consideration of the prior art, we do not find the u-shaped scow nor any example of blocking up a spring connection to prevent movement. We do find from such consideration that it is a common thing to use springs in a connection between two moving things, or between a floating object, vessel, or something to be connected with a vessel; that a pivotal shaft support similar to the one in the patent in suit and a buoyancy tank are not new, and except for the spring, the rear sling was not new. No plow at the bottom of the launchway is found in any pipe-laying apparatus, but a plow in a similar location is found in apparatus used for laying submarine cables. We do, however, find a wooden shoe at the rear end of the launchway in the apparatus used in the pipe-laying under the Willamette river and the Chelsea creek. The other elements of the patent in suit are shown in the prior art. It thus appears that the patent in suit is for a combination most of the elements of which were old and well-known in the prior art, and therefore the construction of the claims must be limited thereby; but a consideration of the file wrapper of the patent in suit still further limits the construction of its claims.

Plaintiff first filed his application in the Patent Office on May 27, 1915, and asked for fourteen very broad claims. Before action on his case, the plaintiff asked for two additional broad claims, numbered 15 and 16. He then changed his attorneys, revised all his claims, recasting them into fourteen claims. Upon examination, claims 2 and 11 were allowed and now constitute claims 2 and 9 of the patent in suit. Plaintiff acquiesced in the action of the Patent Office in rejecting the claims, and amended his application, recasting some claims and presenting new claims which with the claims allowed made ten in all. Claim 10 was finally canceled.

As a result of the amendments, we find claims 1, 3, 4, 5, and 7 of the patent in suit definitely include a spring in some form or other in the connection between the scow and launchway. The inclusion of the spring having been relied upon by the patentee to secure the allowance of the patent, he cannot now broaden his claims to include other means which were covered by the rejected claims. It is true that claim 2 of the patent in suit contains as one of the elements of the combination a "yieldable connection

between said support and launchway," but that is limited by the material element defined, "means for rendering said connection substantially unyielding." But for such limitation the original claim in my opinion would have been rejected with original claim 1.

The elements "a plurality of spaced cushioning connections," found in claim 9 (formerly claim 11), have a meaning limited to the words used and cannot be given a broader meaning or the claim would have been rejected as were the other claims. Claim 6 as submitted (then numbered 7) provided between said vessel and a medial submerged portion of the launchway "a resilient reinforcing connection." This was rejected, but was amended and reads in its final form, "a supporting connection including resilient means." The claim as allowed, in my opinion, cannot be held to cover a supporting connection which is inherently resilient.

The rejection of claims 5 and 8 as submitted, the cancellation thereof, and the argument made on behalf of the patentee in favor of the present claim 8 of the patent in suit, clearly limits the patentee to a buoyancy tank secured to the launchway, the function of which is to regulate the action of the scraper. It thus appears that the patent in suit is a combination patent, and if any essential element of any claim is omitted the patent is not infringed.

[2] The patent in suit is not a pioneer patent, and while the patentee is undoubtedly entitled to a restricted range of equivalents, he cannot broaden the allowed claims of his patent by claiming as an equivalent anything that was rejected.

The first question to be decided is: Does the defendant's apparatus infringe the patent in suit?

The apparatus of the defendant is clearly shown by the blueprints offered in evidence and by oral testimony, and the launchway and trailer were examined by me in company with the counsel for both parties at the defendant's pier on Staten Island. The apparatus included a derrick scow, a curved steel launchway of bridge-like construction, supported at its forward or upper end from the scow, its lower or rear end resting upon the trench bottom. The lower end of the launchway was sheathed over on its underside for a distance of approximately 36 feet. Within the launchway suitable guides were provided which, while holding the pipe in alignment, permitted the same to slide down as the apparatus was advanced after a joint was completed.

The connections between the launchway and the scow included a heavy wire rope-bridle attached to a spreader, which was in turn attached to the launchway, the bight of the bridle resting in the groove of an eccentric sheave. The eccentric sheave was pivoted upon a longitudinally extending shaft mounted in an I-beam framework rigidly secured to and projecting slightly over the bow of the scow. There are two wires that come from the lower end of the launchway to a spreader, two more that come from the spreader to a block in which a sheave is located. The towing wires which go to the deck are in reality one wire with the bight engaged by this sheave. The two runs of the towing wire come up over sheaves mounted on a transverse horizontal axis in the forwardly projecting end of the I-beam framework on deck. The port run of this wire has an eye spliced therein and is connected by a link to a turnbuckle, which in turn is connected to a threaded rod passing through a crosshead on the I-beam framework. Behind the crosshead the threaded rod is surrounded by a washer, a pipe spacer or spreader, another washer, and a nut. The port run of the towing wire goes into and around a sheave in a block resting on the I-beam framework, and is returned upon itself and held by cable clamps. The block is attached to a turnbuckle, which in turn is attached to a threaded rod extending through the crosshead and fastened exactly as the port run of the wire is fastened. There are also two preventer wires which are attached to the lower end of the launchway at the same point as the towing wires, and lead diagonally outward and upward to the corners of the bow of the scow where they are fastened to bitts in the usual way.

A pontoon or buoyancy tank was mounted at the lower end of the launchway adapted to be filled with air if occasion required in order to lighten the bearing of the launchway on the bottom. In the laying of Narrows siphon No. 2, this tank was filled with water at the beginning of the work and remained filled until completion.

In addition to the foregoing, the defendant, for the purpose of straightening the pipe as it left the launchway, attached to the lower end of the launchway a device of box-like construction called a trailer, which was connected to the launchway by a horizontal shaft extending from side to side of the launchway and surrounded by a folded metal hinge member which embraces two forwardly extending plates of the trailer, the plates and hinge member having registering holes through which a vertical pin

passes, giving the trailer considerable freedom of movement relative to the launchway in a vertical plane, and limited movement relative to the launchway in a horizontal plane. The underside of the trailer for substantially one-half of its length from the rear end was sheathed over, and from the forward end of this sheathing to the forward end of the trailer the structural crossbars were left open. These crossbars were of solid 2x4 cross-section and served to hold the box-like structure together as well as to support guide rails upon which the pipe rested as it passed through the trailer. All of these crossbars were rectangular except that the forward side of the crossbar where the forward end of the sheathing commenced had a slight angle. When assembled with the launchway, the underside of the trailer, including the sheathed-over part and the crossbars, were all substantially on the same horizontal plane.

Plaintiff contends that defendant's apparatus was not constructed as the result of the independent work of Mr. W. L. Chapman and others employed by the defendant, but that Mr. Lewis exhibited his drawings to Mr. Chapman, and that such drawings formed the basis of the defendant's apparatus. In my opinion the plaintiff is in error in this contention and I utterly reject it. The defendant's apparatus follows the teachings of the prior art. A careful consideration of the defendant's apparatus and all the testimony in the case at bar convinces me that the defendant does not employ springs or spring means, or a scraper, as defined in the patent in suit. The extra washers shown in the photograph of the apparatus used in 1923, near the place where the pieces of pipe were installed, in places where springs were used in 1914, does not even tend to overcome the positive evidence that no springs were used in the 1923 apparatus.

As I have hereinbefore held, claims 1, 3, 4, 5, and 7 of the patent in suit are definitely limited to include a spring in some form in the connection between the scow and the launchway, and as I find that there are no "springs," "spring means," or "cushioning springs" or equivalents thereof in the defendant's apparatus, one of the essential elements of each of the said claims is not found in the defendant's apparatus, and claims 1, 3, 4, 5, and 7 of the patent in suit are not infringed.

Claim 2 of the patent in suit defines, as one of the elements, "a yieldable connection between said support and launchway for permitting the former to rise and fall to a greater degree than the latter"; and even if the connection between the defendant's scow and launchway be in a sense "yieldable," it is not yieldable in the sense that that word is used in said claim in the patent in suit, because the launchway hangs directly from the eccentric sheave and must rise and fall as the eccentric sheave rises and falls. Nor can it be claimed that the wire rope, because of its inherent resiliency, affords such yieldable connection, because if that were so the claim would be invalid in view of the prior art.

The meaning of "yieldable connection" as defined in the said claim 2 may be more readily ascertained by reading the modifying element of said claim "and means for rendering said connection substantially unyielding," which means are described in the specifications, page 2, lines 89–93: "Similarly, wedges or chock blocks 47 are provided for insertion in the slots 39 below the shaft 37 for completing a rigid connection of the launchway with the vessel." From which it is apparent that the "yieldable connection" as defined in claim 2 of the patent in suit is a connection including springs.

In the defendant's apparatus there are no springs, and if the connection between the scow and the launchway in the defendant's apparatus is in any sense yieldable, there is nothing whatsoever by means of which this connection can be changed or rendered unyielding.

Claim 2, therefore, is not infringed.

Claim 6 of the patent in suit defines as one of the essential elements "a supporting connection including resilient means between said vessel and a medial submerged portion of said launchway." This claim is drawn to read upon the rear sling 21 of the patent in suit containing the spring 21' therein. I find no such support in the defendant's apparatus, and were it not for the spring 21' claim 6 would be invalid. Even if it could be held that the towing and preventer wires constituted a support, they would not be the supporting connection defined in said claim, between the vessel and a medial submerged portion of said launchway, as both towing and preventer wires are attached to the launchway at the extreme rear end and not at the "medial submerged portion thereof."

There are no springs in the defendant's apparatus, and the plaintiff, as I have hereinbefore shown, has limited himself to "a supporting connection including resilient means," and cannot claim that a wire rope is an equivalent of the spring because of its inherent resiliency, as a claim made by

him for "a resilient reinforcing connection" was rejected and he acquiesced and amended by substituting the present claim 6.

Claim 6, therefore, is not infringed.

Claim 8 of the patent in suit makes no reference to the character of the connection between the scow and the launchway, but after defining a "launchway," defines as two of its material elements, "provided adjacent its submerged end with a scraper, and a buoyancy tank secured to said launchway and tending to regulate the action of said scraper." There is no scraper on the defendant's apparatus. If this claim could be read on the sheathed portion of the rear end of the defendant's launchway, then on the prior art it would be void, and further to allow the plaintiff to so broaden his claim would be to give him what was rejected in the Patent Office and acquiesced in by him when in his argument he said:

"Further, however, none of the patents cited show a launchway provided with a scraper. Moreover, in those patents which show buoyancy devices, it is believed that such devices are provided merely to lighten the load of the submerged parts rather than to affect the action of the auxiliary device at the submerged extremity of the launchway."

It thus clearly appears that the scraper of the plaintiff's patent was an auxiliary device, not a smoothed sheathed undersurface of the launchway.

The trailer, as I have hereinbefore described it, is not a scraper, nor does it perform the function of the scraper as described in the plaintiff's patent in suit, its weight is appreciably less than the sheathed portion of the launchway which preceded it in the laying of the pipe, and when assembled with the launchway, the underside of the crossbars of the forward half of the trailer, and the sheathed rear half of the trailer are all substantially on the same horizontal plane, and therefore it would be impossible, in my opinion, for the trailer to perform the function of a scraper as defined in the patent in suit.

Plaintiff made much of the fact that the forward side of the crossbar where the forward end of the sheathing commenced was at a small angle, but in my opinion that does not constitute a scraper nor make it possible for the trailer to perform the function of a scraper as described in the specification of the patent in suit.

The scraper shown in the drawings of the patent in suit, and on the blueprint which the plaintiff showed to Mr. Flynn in September, 1913, were in the nature of plows.

Having found that there is no "scraper" in the defendant's apparatus, there can be no "buoyancy tank secured to said launchway and tending to regulate the action of said scraper." Plaintiff cannot broaden his claim to cover any buoyancy tank, because they were well known to the art, and he succeeded in having the present claim 8 allowed on the argument hereinbefore quoted, wherein the buoyancy tank in his application was differentiated from others.

Claim 8 is therefore not infringed.

Claim 9 defines as one of its material elements "a plurality of spaced cushioning connections between said support and said launchway to substantially free the latter from vibrations of the former caused by water fluctuations." The spaced cushioning connections of the patent in suit must comprise the connections between the scow and the launchway at its forward end and the rear sling 21, both of which are made up with springs.

There are no springs on the defendant's apparatus, and if it be contended that the connections between the scow and the launchway, all of which are of wire rope, are spaced cushioning connections, then the claim would be void for anticipation by the Chelsea creek apparatus, which had wire rope connections between the scow and launchway.

Claim 9 is therefore not infringed.

I am unable to agree with the defendant that the patent in suit is not valid. As I have construed the same, no claim can be held void for anticipation because the elements of no one claim are all found in any former patent. As I have hereinbefore found, it is entitled only to a limited construction. Many of the elements are old and well-known, but I have not found them all disclosed in any former patent, and invention may consist in combining old and well-known elements and securing a new and useful result, or an old result in a more facile, economical, and efficient way. Minneapolis, St. P. & S. S. M. Ry. Co. v. Barnett & Rec. Co., 257 F. 302, 168 C. C. A. 386; Imhaeuser v. Buerk, 101 U. S. 647, 25 L. Ed. 945; J. L. Owens Co. v. Twin City Separator Co., 168 F. 259, 93 C. C. A. 561. The use of springs for certain purposes was well known, but their use as disclosed in the patent in suit seems to me to have represented more than mere mechanical skill and to have constituted invention, although it did not constitute a large addition to the art. And the same may be said of the plow, unnaturally described as a "scraper," and the buoyancy tank by which the effect of the

scraper could be regulated. In my opinion the patent is valid, but has not been infringed by the defendant.

A decree may be entered in favor of the defendant, dismissing the plaintiff's bill of complaint, with costs.