CITY OF BOSTON v. ALLEN.

(Circuit Court of Appeals, First Circuit.   December 9, 1898.)

No. 245.

**1. PATENTS—INFRINGEMENT—PATENT FOR COMBINATION.**
    In the patent for a combination in suit here, the description in the specification of details which the claim does not make elements of the combination, and which are not essential to it, is to be held as only pointing out the better method, and it is not essential, to constitute an infringement, that the infringing device should contain such details.

**2. SAME—IMPLIED LICENSE.**
    The fact that an engineer in the employ of a city, in building a ferry for the city, made an improvement in the gangway used, which improvement he afterwards patented, raises no presumption, either of law or fact, in favor of an implied license to the city to use the patented device at another ferry built at another place several years afterwards.

**3. SAME—ACTION AT LAW FOR INFRINGEMENT—DAMAGES.**
    In an action at law for infringement, where plaintiff shows no established license fee, no market price, and no other use of the invention than that by defendant, there is no basis upon which substantial damages can be computed, and nominal damages only are recoverable.  Coupe v. Royer, 15 Sup. Ct. 199, 155 U. S. 565, applied.

In Error to the Circuit Court of the United States for the District of Massachusetts.

This was an action at law by William H. Allen against the city of Boston for the infringement of a patent.   The defendant brings error.

Thomas M. Babson (Frederick E. Hurd, on the brief), for plaintiff in error.

Francis S. Hesseltine, for defendant in error.

Before PUTNAM, Circuit Judge, and WEBB and BROWN, District Judges.

PUTNAM, Circuit Judge.    This writ of error was brought to reverse a judgment obtained against the plaintiff in error for a substantial amount of damages in a suit for an infringement of a patent for improvements in supplemental gangways for ferryboats, which issued November 18, 1884, to one Doten.    The plaintiff below is his assignee of record, and the suit was for an infringement which occurred after the assignment.    The city of Boston was and is the owner of two separate ferries to East Boston, known as the North and South

Ferries; but both of them were and are under the control of the same officers, and run by the same department, known as the "Ferry Department." The North Ferry was rebuilt within two years before the patent in controversy issued, in accordance with general plans made by the city engineer, but under the supervision and the immediate charge of Doten, who was then the engineer of the ferry department. The most favorable aspect of the case for the plaintiff below is that the improvements covered by the patent were suggested by Doten during the rebuilding of the North Ferry, and while it was his duty to use his skill as a mechanic and an engineer in the interests of the city in carrying on that work; and that the improvements, while not material to the work, were incidental to it, and apparently advantageous. No compensation was demanded by Doten for the use of the improvements at the North Ferry until in 1885, after Doten had left the employment of the city, he made a claim on the officers of the ferry department for reimbursement for the use of his improvements; but this claim was not followed up. The title of the patent came into the plaintiff below in July, 1890, and subsequent to that date the patented improvements were made use of by the city at the South Ferry. The suit covers both ferries, but no question was made at the trial with reference to the claim of the city that it rightfully applied, and continued to use, the improvements so far as the North Ferry was concerned; and the damages awarded by the jury were entirely with reference to the other. The case fails to show that there ever was any use of the improvements elsewhere than on the two ferries spoken of, or that the patentee or his assignee ever received any royalty or other compensation for the use of the patented device; and there was no evidence bearing on the question of damages, except what appeared as to the amount of travel over each of the two ferries in question, and what related to the nature of the device. The specification shows some details which are not covered by the claim.

One of the assignments of error objects to the charge of the court on the ground that it was not sufficiently specific in explaining to the jury the importance of the various elements of a claim for a patented combination, to which class the patent at bar belongs. The controversy which arose with reference to this part of the case issued out of the fact that the details referred to were not used at the South Ferry. It is, however, so well settled, as applied to the case at bar, that a description in a specification of details which the claim does not make elements of the combination, and which are not essential to it, is to be held as only pointing out the better method of using the combination, that we need not consider this exception further. On the record as made, there were no proofs, and nothing in the patent, to require the court to state to the jury, on the issue of infringement, anything more with reference to the law as to patents for combinations than the general rules which the charge contains.

Another ground of exception was that the defendant below contended that, even if the patented device was used by the city, it did it under an implied license, which covered the South Ferry as well as the North Ferry, and that this issue should have been submitted to the jury. It is to be noticed that the only contention on this point

of the defendant below is with reference to the doctrine of implied license.

The third ground of exception was that the court should have instructed the jury, as requested by the defendant below, that, on the evidence produced, the jury should not render a verdict for more than nominal damages. With reference to the general subject-matter presented to us by the request for instructions as to an implied license, it first came before the supreme court in McClurg v. Kingsland, 1 How. 202. The subsequent cases in that court touching the same subject are Hapgood v. Hewitt, 119 U. S. 226, 7 Sup. Ct. 193; Wade v. Metcalf, 129 U. S. 202, 9 Sup. Ct. 271; Solomons v. U. S., 137 U. S. 342, 11 Sup. Ct. 88; Dalzell v. Manufacturing Co., 149 U. S. 315, 13 Sup. Ct. 886; Lane & Bodley Co. v. Locke, 150 U. S. 193, 14 Sup. Ct. 78; Keyes v. Mining Co., 158 U. S. 150, 15 Sup. Ct. 772; and Gill v. U. S., 160 U. S. 426, 16 Sup. Ct. 322.

Wade v. Metcalf, which related to specific machines, held that that case turned on section 4899 of the Revised Statutes. This reads as follows:

"Sec. 4899. Every person who purchases of the inventor or discoverer, or, with his knowledge and consent, constructs any newly invented or discovered machine, or other patentable article, prior to the application by the inventor or discoverer for a patent, or who sells or uses one so constructed, shall have the right to use, and vend to others to be used, the specific thing so made or purchased, without liability therefor."

Solomons v. U. S., in discussing the general subject-matter, describes two subdivisions, which are important to be kept carefully in view. There may be other subdivisions, which we need not notice. The opinion of Mr. Justice Brewer says, at page 346, 137 U. S., and page 89, 11 Sup. Ct.:

"If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer."

It will be seen that this has no relation to the doctrine of implied license, and it was so understood by the learned justice who drew the opinion, because he proceeds afterwards on the same page to state under what circumstances a jury or a court trying the facts is warranted in finding that an implied license is given. In Gill v. U. S., the whole subject-matter was reviewed by Mr. Justice Brown, but we discover there no intention to disregard the opinion in Solomons v. U. S. Indeed, the distinction which it makes is clearly recognized at page 435, 160 U. S., and page 326, 16 Sup. Ct. There is much ground for claiming that Doten, through his relations to the city, came within the citation made from Solomons v. U. S.; but, at the trial below and in this court the city specifically rested its case on the doctrine of implied license. An examination of the cases which we have cited will make it clear that the existence of such a license has always been treated as a mixed question of law and fact. Therefore the determination of this issue in one suit cannot make a decisive precedent for another, because the results of such questions may be caused to differ by slight circumstances.

There is nothing to show that Doten or his assignee ever knowingly or intentionally consented that the alleged improvements should be used except at the North Ferry; and, if there were any implied license covering anything further, it was one raised from the circumstances, and not from the proved intention of the parties. A practical application of the law in this particular is undoubtedly that given by Judge Lowell in Wade v. Metcalf, 16 Fed. 130 (decided in 1883), being the same case as that in the supreme court, bearing the same name, to which we have referred, and in which, on appeal, the decree of the court below was affirmed. To be sure, the supreme court did not touch the precise question which we have at bar, but, looking at the desirability of having some practical rules to aid in the determination how far such a license reaches, and at the length of time the rule stated by Judge Lowell has been followed without any dissent, we feel compelled to apply it to the present case. Rob. Pat. § 832; Manufacturing Co. v. Kinney, 15 C. C. A. 531, 68 Fed. 500, 507. According to that rule, an implied license, if it relates to an improvement in the process, ordinarily authorizes the employer to continue to practice the process during the whole period of the patent. This follows because the subject-matter is indivisible; but, if the invention pertains to a machine, it is understood, ordinarily, that only the specific machine or machines which have been set up during the time of the employment are protected. Such is the ordinary rule, and it is plainly based on a sound discretion. It is, of course, more a rule for the application of facts than a rule of law, and therefore it is not rigid. When the patented matter is a product, particularly if it is a minor product, or even if it is a minor machine, so that in either case it is used in quantities, like the stop-valve in Lane & Bodley Co. v. Locke, 150 U. S. 193, 14 Sup. Ct. 78, already cited, its unlimited use during the time of employment may raise an implication of fact in favor of a license for a time likewise unlimited, as in the case of a process; but in the suit at bar the device used at the North Ferry must be regarded as a machine within the meaning of the rule stated by Judge Lowell. We are unable to perceive that the permitted use of one or more devices in issue at one locality in 1882 or 1883 raised any presumption, either of law or fact, in favor of a permission to use others at another locality some years later, or that there is anything in the record which called upon the court below to give the ruling requested by the defendant below relating to this subject-matter.

This leaves only the question of damages. The plaintiff in error claims that on the proofs in the record, the substance of which we have already fully given, only nominal damages could, at the most, be recovered. The condition of facts in the case at bar is, for all substantial purposes, the same as in Suffolk Co. v. Hayden, 3 Wall. 315, and in Coupe v. Royer, 155 U. S. 565, 583, 15 Sup. Ct. 199. It is impossible to discover any substantial distinction between the three cases so far as concerns the facts bearing on this issue. The plaintiff in error raises a question as to the admissibility of evidence, put in by the plaintiff below, showing the number of passengers using the ferries in issue here from February 1, 1896, to February 1, 1897.

As the writ of the plaintiff below was issued September 2, 1896, this period might, perhaps, have been objected to as irrelevant, on the ground that a portion of it was subsequent to that date; but a narrow objection of this kind must necessarily be stated precisely, and nothing of that nature appears in the record. As for the general relevancy of proof of this kind, it is to be noted that the evidence was offered early in the trial, and there was no request on the part of the defendant below that it should thereafter be stricken out if shown to be irrelevant. At the time it was offered, it was presumptively material, because, ordinarily, in determining the amount of damages to be awarded for an infringement of a patent, the extent of use is a very vital element; and this evidence bore strictly on that topic.

Coming now to the general topic of the rule of damages proper on the proofs shown in the record, the court below followed with the utmost strictness and care the rules practically applied by the supreme court in Suffolk Co. v. Hayden, 3 Wall. 315. But in this respect this case must be· held to be qualified, if not overruled, by Coupe v. Royer, 155 U. S. 565, 15 Sup. Ct. 199, at pages 582, 583, 155 U. S., and pages 206, 207, 15 Sup. Ct. On page 582, 155 U. S., and page 206, 15 Sup. Ct., the opinion in the later case says:

"The topic is one upon which there has been some confusion, and perhaps some variance, in the cases. But recent discussion has cleared the subject up, and the true rules have become well settled."

This is a direct caution from the court to regard as obsolete any prior decisions which do not harmonize with the rules as laid down in that case. There the rulings of the court below included what was carefully avoided by the court in the case at bar,—that the jury should find as an element of damages what the defendants below might be shown to have gained from the use of the patented invention. But in Coupe v. Royer the court did not stop with condemning this rule, but added the following, at page 583, 155 U. S., and page 207, 15 Sup. Ct.:

"Upon this state of facts, the evidence disclosing the existence of no license fee, no impairment of the plaintiffs' market, in short, no damages of any kind, we think the court should have instructed the jury, if they found for the plaintiffs at all, to find nominal damages only."

The words in this quotation "no damages of any kind" will be found, on an examination of the facts of the case, to be either a mere statement of a conclusion of law, or, perhaps, more strictly an indication of a purpose on the part of the court to limit clearly its expressions to circumstances like those under consideration. One or the other of these deductions must be accepted, because the facts shown in the statement of the case are entirely covered by what was said by the court independently of the words "no damages of any kind"; and, as already said, they cannot be distinguished from the suit at bar. In the instructions of the court below in the case ·before us the jury were directed to consider the question of the value of the invention to the plaintiff as a piece of property. We have no occasion to question this; but neither in Coupe v. Royer nor in the case at bar were there any substantial elements from which the jury could de-

termine such an issue, and all estimates relating thereto were purely conjectural, except so far as they might have been governed by the fact that neither the patentee nor his assignee had ever, in the course of the many years which the patent had run, derived any pecuniary advantage from it. Of course, in both cases the jury were in a position to pass on the intrinsic value of the alleged improvements. It is true that the words cited by us from Coupe v. Royer went beyond what was necessary to determine the correctness of the rulings of the court below; but, inasmuch as the judgment was reversed, we are compelled to receive what was thus said as intended to give the court below proper directions for its rulings on the question of damages in the event of a new trial. In fact, the court so expressly stated at page 581, 155 U. S., and page 205, 15 Sup. Ct., in the following language:

"But as, from the nature of a trial by jury, the court will be unable to anticipate the conclusion which the jury may reach on that question, explanations will have to be given to the jury as to the measure of damages applicable in such cases."

Therefore we cannot pass over as a mere dictum what was thus said, but we are compelled to accept it as settling the law on these points, as applied to the facts in Coupe v. Royer, and the like facts in the case at bar, until, at least, we get some other instructions from the supreme court. It is entirely apparent, therefore, that, on the proofs in this case, the law limited the plaintiff below to nominal damages. The exceptions taken were not to anything in the charge which is reported to us, but to the refusal of the court to grant certain requests for instructions, of which there were two, in the following language:

"The plaintiff having offered no evidence of any particular value that his invention was to the defendant, if you find for the plaintiff, you can find for nominal damages only."

"Your verdict in this case can be only for the damages which he [the plaintiff] has sustained by the alleged use of his patent by the defendant during the six years prior to the date of his writ. There being no evidence that the patent was of any value to him during this time, or that the use of it by the defendant during the six years was any injury to him, or that he paid anything for the patent, you can find only nominal damages, if any, in this case."

The first of these requests may, perhaps, be justly criticised; but the latter plainly raised the issue in such way that there can be no question that the court and the parties understood exactly what it was. Under these circumstances, the court should have expressly directed the jury that it should not return a verdict for more than nominal damages, although there is much in the charge which would have justified such a finding.

The rule of damages which we have applied to this case in accordance with Coupe v. Royer was foreshadowed by Mr. Justice Field in Black v. Thorne, 111 U. S. 122, 124, 4 Sup. Ct. 326; and in City of Seattle v. McNamara, 26 C. C. A. 652, 81 Fed. 863, under circumstances which were singularly like those of the case at bar, the circuit court of appeals for the Ninth circuit reversed all the earlier decisions in that circuit on the strength of Coupe v. Royer, and came to the

same practical result which we have reached. The judgment of the circuit court is reversed, and the case is remanded to that court, with directions to set aside the verdict and to proceed thereafter according to law, unless the plaintiff below shall, within such time as that court may direct, remit all damages in excess of one dollar; and the costs in this court are awarded to the plaintiff in error.