### HANCOCK v. BOYD & GETTY.

(Circuit Court, D. Kansas, Second Division. May 14, 1909.)

Nos. 1,047–1,050.

1. PATENTS (§ 18*)—INVENTION—SIMPLICITY OR OBVIOUSNESS OF DEVICE.

The fact that the distinguishing feature of a patented mechanical combination is simple and apparently an obvious improvement on prior structures does not negative invention which must be conceded where the structure as a whole is undoubtedly superior to any in the prior art, and was the first to achieve unqualified success both in results and commercially.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 18; Dec. Dig. § 18.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2.** PATENTS (§ 58*)—SUITS FOR INFRINGEMENT—DEFENSE OF ANTICIPATION—BURDEN OF PROOF.

The granting of a patent is prima facie evidence of the novelty of the device described, and the burden of proof to establish anticipation rests upon the defendant alleging it.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 75; Dec. Dig. § 58.*]

**3.** PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—ROTARY DISC PLOWS.

The Hardy patent, No. 556,972, for a rotary disc plow, the distinguishing feature in the combination of parts being the backward inclination of the plow disc from a vertical plane, so that the disc, when in operation, may carry the furrow slice on its face, may have a suction motion drawing it into the earth, and may present a cutting instead of a scraping edge to the soil at the bottom, was not anticipated, and taking the combination as a whole discloses invention. Nor is it invalid because the precise angle of inclination of the disc is not stated in the claims, such angle as stated in the specification being subject to adjustment to meet varying conditions. Claim 2 also *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing. With this action has been consolidated in this court the actions of Nina Little Hancock against George C. Lorrey, against Kabler & Donaldson, and against Matthias Dick.

Chester Bradford and S. B. Cantey, for complainant.
H. H. Bliss and John H. Atwood, for defendants.

POLLOCK, District Judge. The above suits were instituted by M. T. Hancock against defendants therein named to enjoin infringement of claim No. 2 of letters patent numbered 556,972, applied for July 31, 1895, and issued to Clement A. Hardy March 24, 1896 (hereinafter referred to as the "Hardy patent"), and for an accounting. At the date of the commencement of these suits and many years prior thereto, Hancock was the owner of the rights granted by said letters patent, save in the territory of Texas and Oklahoma, and defendants had within six years prior thereto sold rotary disc plows within the jurisdiction of this court manufactured by the Moline Plow Company, Deere & Co., the Emerson Company, the La Crosse Plow Company, Grand De Tour Plow Company, the Kingman Plow Company, and the Eagle Manufacturing Company, which implements, as claimed in the bills of complaint, infringe upon claim 2 of the Hardy patent. Since the institution of these suits M. T. Hancock has deceased, and his widow, Nina Little Hancock, has been substituted as complainant in each of the suits. The record shows the suits are being prosecuted for the benefit of certain licensees under the Hardy patent as well as complainant, and the defense has been assumed by the Moline Plow Company of Moline, Ill., Deere & Co. of Moline, Ill., the Emerson Manufacturing Company of Rockford, Ill., the La Crosse Plow Company of La Crosse, Wis., the Kingman Plow Company of Peoria, Ill., and E. Bement & Sons of Lansing, Mich. B. F. Avery & Sons of Louisville, Ky., are also interested in and contributing toward the defense made. On issues joined an order of reference was made to a special master, who took the proofs, read and considered the same, witnessed field tests made, heard arguments of solicitors, and reported

to the court his findings of fact and recommendations as to decree herein in accordance with the order of reference. The report shows careful consideration, examination, and thorough research of the record, and elaborate care in its preparation. Defendants have filed exceptions to this report, which exceptions have been fully presented in oral argument and on printed briefs of solicitors, and come now on for decision.

The decision of the cases presented directly or indirectly affects almost, if not all, the manufacturers, vendors, and users of what is known as rotary disc plows in this country; hence it is of large importance to the manufacturers, implement dealers, and the farming community, and far reaching in effect. In recognition of this fact, neither expense nor time, nor care has been spared in the preparation of these cases. They have been fully briefed and argued by eminent solicitors, skilled in the law of patents; and, were it not for the well-recognized fact that the presentation of the cases to this court and its decision therein while steps necessary to be taken in the progress of the cases to an ultimate decision by a higher tribunal yet wholly unimportant for any other reason, I should feel in duty bound to consider each exception taken to the report with some small measure of the care and detail with which they have been so elaborately and faithfully prepared and presented here. However, as the decision here made from the very nature of the cases will have no ultimate effect on the rights of the parties, but will serve only to pave the way for a review by another court, I shall content myself with a brief discussion in a memoranda decision of the more important questions presented in argument, leaving to the appropriate reviewing court of last resort to work out in elaborate detail all the questions presented, to the end that the conclusion there reached, which will ultimately settle the rights of all parties in interest, may be permanently recorded on the monuments of such tribunal.

The sole question of merit, as presented for decision, involves alone the validity of claim 2 of the Hardy patent. This claim reads as follows:

"2. In a rotary plow, the combination with a plowbeam, of a box-bearing arranged on the plow-beam, an axle rotatable in the box-bearing, a plow disc secured to the said axle, rotated solely by the natural draft thereof and the friction of the soil, set diagonally to the line of draft and inclined out of a vertical plane for cutting the furrow and turning the soil therefrom, a furrow-wheel mounted on an axle at the same side of the plow-beam as the plowing-disc and arranged in advance thereof, an arm pivoted to the rear portion of the plow-beam and provided with a caster-wheel arranged in the rear of the plowing-disc, and a stop device for limiting the swinging motion in one direction of the arm carrying the caster-wheel, said furrow-wheel and caster-wheel being inclined for resisting the side pressure of the plowing-disc, substantially as described."

In the discussion of the question presented, I shall consider as settled beyond dispute the title of Hancock to all rights granted by the patent, except as to the territory of Texas and Oklahoma, and the right of the present complainant to prosecute these suits. I shall also pass over as settled and concluded by the proofs the fact that the rotary disc plows manufactured and sold by all the companies and

persons engaged in the defense of these suits infringe upon the rights of complainant secured to her by the patent in suit if claim 2 of the patent be valid; for of this fact there can be no possible doubt, either from the proofs, or when the structure of such implements is compared with claim 2 of the patent. I shall further treat as settled and determined by both the proofs and the admissions of solicitors for defendants, as well, the practical utility of rotary disc plows manufactured in accordance with the specifications of the Hardy patent, and consider as in dispute here alone the validity of claim 2 of that patent.

The invalidity of this claim is predicated on two grounds—lack of invention and anticipation. An examination of the voluminous proofs and exhibits found in the record, and the briefs and arguments of solicitors for the respective parties, narrows the issue here presented down to a single proposition. That is: Was the conception of Hardy to incline the plow disc or discs out of a vertical plane, as expressed in his claim, invention? If so, was it anticipated? It must be, and is, conceded all the other elements of the claim in controversy were old and well known prior to the date of the Hardy patent, and it is this feature of the inclination of the plow disc out of a vertical plane— that is to say, a tilting of the plow disc backward at its top part— which constitutes the great virtue of the rotary disc plows of to-day. No intelligent manufacturer of disc plows would make one with this feature omitted, and, if manufactured, such a plow could not be sold, and would not be used. The reason for this is quite apparent to even a novice at this late day, for the plow disc rotating in a plane inclined backward from the vertical and at an angle with the line of draft at all points presents a cutting edge and not a pushing or scraping one in its point of contact with the earth; thus requiring less power to perform the work, and not compressing the soil. Again, with the plow disc moving in this plane, it carries the weight of the furrow slice on its face, and gives it a suction which of itself holds the plow in the ground, and obviates the use of heavy weights to force the plow disc into the soil. Prior to the advent of the Hardy patent, heavy weights were used to force the vertical disc into the earth, and, in case the soil was very dry and hard, could not be plowed at all by implements then in use. Conceding, as I think must be done from an examination of the entire record, the almost complete adaptability of the disc plow manufactured in accordance with the Hardy patent to the use for which it was designed under all conditions, and more especially in the plowing of a hard, dry soil; admitting, as must be done, disc plows manufactured according to the claim of the Hardy patent perform more and better work with less draft than any like implement theretofore designed or made; and, again, conceding the very general use into which disc plows so constructed sprung after the advent of the Hardy patent, as is shown not only by the proofs in this case, but the admitted fact that all the rotary disc plows manufactured by defendant companies infringe upon rights protected by the Hardy patent if that patent be valid; and conceding, further, the only new element found in the claim of that combination patent is the inclination of the plow disc out of a vertical plane—and the questions remain to be an-

swered: Was this conception of Hardy invention, as that term is employed in the law? And, if so, was Hardy debarred by what the prior state of the art showed at the date of his invention from appropriating the idea as his own private monopoly? Of these questions in their order.

As has been seen, at this late day, with the completed implement before us, with a practical test made demonstrating the ease with which the work is performed by such implement, with a thorough knowledge of the ultimate end sought to be accomplished, the resistance which must be overcome in the doing of the work, and all the knowledge now at hand, it is almost inconceivable why in the experimental stage of designing and manufacturing rotary disc plows the advisability, or, I may say, the absolute necessity, for inclining the plow disc out of the vertical plane was not thought of by some one and employed before the Hardy idea was conceived. But, admitting the simplicity of the idea employed, its almost apparent necessity to accomplish the end sought, and the fact that the change made might have been discovered by mere accident, yet, if it be conceded the idea was new when first employed by Hardy, do these facts detract from its character as invention?

Mr. Justice Bradley, delivering the opinion of the court in Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177, said:

"It is further argued, however, that, supposing the device to be sufficiently described, they do not show any invention, and that the combination set forth in the fifth claim is a mere aggregation of old devices already well known, and therefore it is not patentable. This argument would be sound if the combination claimed by Webster was an obvious one for attaining the advantages proposed—one which would occur to any mechanic skilled in the art. But it is plain from the evidence, and from the very fact that it was not sooner adopted and used, that it did not for years occur in this light to even the most skillful persons. It may have been under their very eyes, they may almost be said to have stumbled over it; but they certainly failed to see it, to estimate its value, and to bring it into notice. Who was the first to see it, to understand its value, to give it shape and form, to bring it into notice and urge its adoption, is a question to which we shall shortly give our attention. At this point we are constrained to say that we cannot yield our assent to the argument that the combination of the different parts or elements for attaining the object in view was so obvious as to merit no title to invention. Now, that it has succeeded, it may seem very plain to any one, that he could have done it as well. This is often the case with inventions of the greatest merit. It may be laid down as the general rule, though perhaps not an invariable one, that, if a new combination and arrangement of known elements produces a new and beneficial result, never attained before, it is evidence of invention."

Mr. Justice Blatchford, delivering the opinion of the court in Consolidated Valve Co. v. Crosby Valve Co., 113 U. S. 157, 5 Sup. Ct. 513, 28 L. Ed. 939, said:

"Richardson's invention brought to success what prior inventors had assayed and partly accomplished. He used some things which had been used before, but he added just that which was necessary to make the whole a practically valuable and economical apparatus. The fact that the known valves were not used, and the speedy and extensive adoption of Richardson valves, are facts in harmony with the evidence that his valves contain just what the prior valves lack, and go to support the conclusion at which we have arrived on the question of novelty. When the ideas necessary to success are made

known, and a structure embodying those ideas is given to the world, it is easy for the skillful mechanic to vary the form by mechanism which is equivalent, and is therefore in a case of this kind an infringement."

In the Barbed Wire Patent Cases, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154, Mr. Justice Brown, delivering the opinion of the court, after detailing the steps taken in the manufacture of barbed-wire fence, said:

"Under such circumstances, courts have not been reluctant to sustain a patent to the man who has taken the final step which has turned a failure into a success. In the law of patents it is the last step that wins. It may be strange that, considering the important results obtained by Kelly in his patent, it did not occur to him to substitute a coiled wire in place of the diamond shape prong, but evidently it did not; and to the man to whom it did ought not to be denied the quality of inventor. There are many instances in the reported decisions of this court where a monopoly has been sustained in favor of the last of the series of inventors, all of whom were groping to attain a certain result, which only the last one of the number seemed able to grasp."

In Keystone Manufacturing Co. v. Adams, 151 U. S. 139, 14 Sup. Ct. 295, 38 L. Ed. 103, Mr. Justice Shiras, delivering the opinion of the court, said:

"Where the patented invention consists of an improvement of machines previously existing, it is not always easy to point out what it is that distinguishes a new and successful machine from an old and ineffectual one. But when, in a class of machines so widely used as those in question, it is made to appear that at last, after repeated and futile attempts, a machine has been contrived which accomplishes the result desired, and when the Patent Office has granted a patent to the successful inventor, a court should not be ready to adopt a narrow or astute construction fatal to the grant."

In Du Bois v. Kirk, 158 U. S. 58, 15 Sup. Ct. 729, 39 L. Ed. 895, Mr. Justice Brown, delivering the opinion of the court, said:

"The Kirk invention is undoubtedly a very simple one, and it seems strange that a similar method of relieving the pressure had never occurred to the builders of bear trap dams before; but the fact is that it did not, and that it was not one of those obvious improvements upon what had gone before which would suggest itself to an ordinary workman, or fall within the definition of mere mechanical skill. It was, in fact the application to an old device to meet a novel exigency, and to subserve a new purpose. That it is a useful improvement can scarcely be doubted. Indeed, in view of the fact that John Du Bois made application for a similar patent himself, and that he and the defendant since his death have constantly made use of the device which differs from that of Kirk only in the fact that he relieves all pressure by lowering the end of the forebay to a level beneath the apex of the dam, it does not lie in the defendant's mouth to deny its utility. The presumptions at least are against him. Leinbenter v. Holthaus, 105 U. S. 94. 26 L. Ed. 939; Western Electric Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670, 35 L. Ed. 294; Gandy v. Main Belting Co., 143 U. S. 587, 12 Sup. Ct. 598, 36 L. Ed. 272."

Judge Wallace, delivering the opinion of the court in International Tooth Crown Co. v. Richmond (C. C.) 30 Fed. 775, said:

"It is not difficult, after the fact, to show by argument how simple the accomplishment was, and by aggregating all the failures of others to point out the plain and easy road to success. This is the wisdom after the event that often forfeits invention, and levels it to the plane of mere mechanical skill. The ingenious argument in this case has not satisfied us that there was no invention in the improvement of Low."

In Ballard v. McCluskey (C. C.) 58 Fed. 880, Judge Coxe, delivering the opinion, said:

"That the complainant's machine is an improvement over all similar machines which preceded it cannot very well be disputed. It is more easy of manipulation, more accurate in adjustment and operation, and more economical in result. Upon the evidence here presented it is able to do more work than any other machine and has practically taken possession of the market. It is, of course, true that many elements of the claims considered separately were old and several of them had previously been combined in similar machines. This is true in almost every instance where combinations are under consideration. It cannot be questioned that Titus was the first to construct the machine of the patent. His combination was new, and, though it may not produce a new result, it certainly produces an old result in a better way. It is not thought necessary to enter upon a discussion of the question how far invention lies in the various elements which make up the combination. An inventor should not be so treated. It is unfair. The combination should be considered in its entirety. If the machine is new, does better work than the machines which preceded it, a strong presumption of patentability is presented."

From a consideration of the proofs, exhibits, models, briefs, and arguments in this case in the light afforded by the foregoing authorities, and many others that may be cited, I am clearly of the opinion the conception formed in the mind of Hardy to incline the plow disc out of a vertical plane, as carried out by him in his combination of parts, judged from the results accomplished thereby, was invention, and the claim of the patent in controversy must be upheld unless anticipated in the prior state of the art.

It will be noticed the claim of Hardy's patent does not specify the exact angle from a vertical plane at which the plow disc shall be set. By reference to Figure 3 of the drawings accompanying his patent, and my measurements taken therefrom, it may be ascertained by a mathematical calculation the backward inclination from a vertical plane of a disc 24 inches in diameter (the size usually employed) will be about 6½ inches. Therefore it is contended by the defense that the claim in this respect is either void for indefiniteness, or that, if the plow discs 24 inches in diameter employed by defendants in the manufacture of their implement be set at a backward inclination from a vertical plane of more or less than 6½ inches, they do not infringe upon the rights granted by the Hardy patent, even if it be found valid.

Again, it is contended if any rotary disc plow be found manufactured or sold prior to the advent of the Hardy patent having the plow disc inclined backward from a vertical plane at any angle from any cause, accidental or otherwise, as the angle of backward inclination from a vertical plane is not definitely fixed in the claim of the Hardy patent in dispute, such prior manufactured or sold implement will show anticipation of the single element of the Hardy combination patent on which complainant relies. In so far as the defense thus made is asserted, it is not thought the precise backward inclination of the plow disc should be stated in the claim to uphold its validity, or to protect it against infringement by others; for, if Hardy was the first to discover the peculiar advantage obtained from tipping the plow disc backward from a vertical plane in order to carry the weight of the furrow slice on its face, to give the rotary action of the disc a cut-

ting instead of a scraping effect, and a suction motion into the soil, all beneficial in accomplishing the result desired, and he also was the first to embody this conception in his combination of elements, as stated in his claim, he is entitled to be protected, for the specifications and drawings accompanying a patent are employed for the purpose of rendering the principles of the patent plain and pointing out the best method of its use, and not for the purpose of limiting the scope of a general claim.

As said by Judge Sanborn in J. L. Owens Company v. Twin City Separator Company (December Term, 1908, Court of Appeals for this Circuit) 168 Fed. 259:

"But the description in a specification or drawing of a form or a composition or construction of a mechanical element, when that form, composition, or construction is not, and is not claimed to be, essential to the combination or improvement claimed, is the mere pointing out of the best mode in which the patentee contemplated applying the principle of his invention under section 4888, Rev. St. (U. S. Comp. St. 1901, p. 3383), and does not deprive him of protection for mechanical equivalents or indicate that he intended to give up all other modes of application. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 418, 28 Sup. Ct. 748, 52 L. Ed. 1122; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co, 45 C. C. A. 544, 106 Fed. 693; City of Boston v. Allen, 91 Fed. 248, 33 C. C. A. 485."

So in the present case, as the essential thing claimed by Hardy is the backward inclination of the plow disc from a vertical plane, so that the disc when in operation may carry the furrow slice on its face, may have a suction motion drawing it into the earth, and may present a cutting instead of a scraping edge to the soil, the precise angle of inclination is one of adjustment under varying circumstances, and not essential to the validity of the claim itself. Therefore the single question remaining is that of anticipation.

This question was presented to the Circuit Court of the United States for the Eastern District of Tennessee, and on appeal from that court to the Court of Appeals for the Sixth Circuit, in the case of Sanders v. Hancock, 128 Fed. 424, 63 C. C. A. 166, where in an elaborate and exhaustive opinion delivered by Judge Severens for the court it was held the combination of the Hardy patent was not anticipated in the prior state of the art. Solicitors for the defense concede this in argument. However, they contend the decision made in that case is merely persuasive here, and further urge the case there was not fully presented to the court. It is therefore earnestly requested the entire matter should be here fully reconsidered. It is true, as shown by the record, in considering the prior state of the art, there was not before the court in the Sanders-Hancock Case the elaborate proofs, patents, models, and working implements presented here. Here the whole realm of knowledge as to the advancement of the art at the date of the advent of the Hardy patent has been carefully searched and drawn upon, with the result there is now before this court as tending to show the prior state of the art something like 42 patents, a large number of models, and many full-sized working implements not brought before the court in that case. However, it is thought to be neither possible nor profitable for this court in this memoranda to mention or attempt a description of all the prior pat-

ents, models, and working implements relied upon by the defense to show anticipation. They cover a period of almost a third of a century, and show the progress toward the completed implement of to-day was not made by leaps and bounds, but by gradual strides, as a brief reference to a few closely allied in principle with those manufactured in compliance with the Hardy patent will disclose. That necessity which is said to be the "mother of invention" perhaps more strongly demanded the use of some such completed implement as the present disc plow in the cultivation of what is known as the "black, waxy" lands of Texas than did any other section of our country. The soil of the "black, waxy" lands of that state, when dry, is extremely hard, tough, and difficult to plow. It was therefore in this section the nearest approach to the Hardy conception was reached prior to the Hardy patent in the use of what is known in the record as the Hancock plows and of the type called Scott, George, Aldrich, Shotwell, Payne, etc. These plows were manufactured at Marshall, Tex., for the Keating Implement Company of the city of Dallas, in that state, in 1894. These plows, with others of that date, were equipped with a wooden plow beam. A casting called a "6 box" was used to affix the axle of the plow disc to the beam. By reason of the plow disc being set at an angle with the line of draft, and the consequent heavy backward pressure on the lower or cutting edge of the disc, when in operation in a hard dry soil, the pressure warped or twisted the wooden beam of the plow so as to incline the plow disc forward at its top part out of a vertical plane, thus preventing its successful operation. To obviate this difficulty, as shown from the proofs and exhibits in evidence, the operator would drive a wedge between this casting and the beam, and thus incline the plow disc backward at its top to or beyond a vertical plane. This wedging is shown in the physical exhibit known as the Keeler plow. At this time Hardy, an expert designer of plows, was working for the Keating Implement & Machine Company at Dallas, and it was by him in experimenting discovered if the casting which affixed the plow disc to the beam was thickened in that part where the wedge had been used, it would incline the plow disc backward from a vertical plane, and when the pressure was applied to the lower edge of the disc in actual operation, the necessity for the wedging backward would be avoided. Therefore he caused what is known as the "B-6 box" to be made by the manufacturing company at Marshall, Tex., and it was thereafter used to some considerable extent. There can be no doubt from the proofs but that the use of this B-6 box did incline the top of the plow disc backward from a vertical plane, and there can be but little ground for denying that Hardy's experiment along this line with the B-6 box led his mind forward to the idea of inclining the plow disc in his combination patent backward from a vertical plane. In the specifications forming a part of his patent is found the following:

"My present invention has for its purpose the provision of the construction and combination of parts whereby the plow discs shall be drawn into the earth by their own action and by the weight of the soil lifted by the discs and carried on their face, and having a cutting action at the bottom of the furrow instead of a scraping, etc. * * * It is my purpose also to provide a plow of the type needed having one or more plowing discs of a concave form ar-

ranged diagonally to the line of draft, and having an adjustable inclination to the vertical, whereby said disc or discs are inclined rearwardly and across the line of draft at such an angle as will effect a clearance between the back edge of the disc and the bottom of the furrow, whereby I avoid unnecessary friction and cause the disc to be drawn into the soil by its own action, the inclination giving the disc suction and drawing it into the ground by the forward motion of the plow and the weight of the soil carried up by the disc," etc.

Whatever may have been the defects sought to be remedied or the end accomplished by the B-6 box, and the consequent inclination of the plow disc backward from a vertical plane, whether it was to obviate the necessity of wedging when the wooden beam became worn or warped by use, or whether it was at that time discovered by him, if the plow disc should be inclined backward from a vertical plane, better results would be obtained, is perhaps not very material here; for it is quite clear Hardy discovered and designed this B-6 box about May, 1894, and, while he may have carried the idea thus obtained forward into his patent, yet I conceive he would have the right to so do without rendering the claim in his patent subject to the objection of anticipation. Again, it is quite clear plows equipped with this B-6 box would not accomplish the same useful purposes of carrying the furrow slice on the face of the plow disc and give the disc the same cutting edge and suction in the earth obtained by the method of construction claimed and pointed out in the patent in dispute.

From an examination of the entire record, including all the patents, models, and working implements now in evidence before the court, and from a comparison thereof with plows manufactured in accordance with the claim of the Hardy patent I think it may be said many of them, by slight modifications and changes, might have been converted into the same useful implements constructed under the Hardy patent, and those completed working exhibits brought before the court to show infringement of complainant's rights under the patent, if such modifications and changes in the old had been made before the advent of the Hardy patent, this question of anticipation now under discussion would have been settled conclusively against the validity of that patent. While the question here presented is not free from doubt or difficulty, yet I am inclined to the opinion none of the prior patents or exhibits presented and relied upon by the defense to show anticipation make out that defense as it must be made out under the rule announced in the adjudicated cases. It is true some are very near in principle, but very near is not close enough to touch. As said by Mr. Justice Brown, delivering the opinion of the court in Topliff v. Topliff and Another, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658:

"While it is possible that the Stringfellow and Surles patent might, by modification, be made to perform the function of equalizing the springs which it was the object of the Auger patent to secure, that was evidently not in the mind of the patentees, and the patent is inoperative for that purpose. Their devices evidently approached very near the idea of an equalizer, but this idea did not apparently dawn upon them, nor was there anything in their patent which would have suggested it to a mechanic of ordinary intelligence unless he were examining it for that purpose. It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to

accomplish the function performed by the patent in question if it were not designed by its maker nor adapted, nor actually used for the performance of such functions."

The burden of proof rests with the defense to make out the claim of anticipation here relied upon. As said by Mr. Justice Swayne in Coffin v. Ogden, 85 U. S. 120, 21 L. Ed. 821:

"The invention or discovery relied upon as a defense must have been complete and capable of producing the result sought to be accomplished; and this must be shown by the defendant. The burden of proof rests upon him, and every reasonable doubt should be resolved against him. If the thing were embryotic or inchoate, if it rested in speculation or experiment, if the process pursued for its development had failed to reach the point of consummation, it cannot avail to defeat a patent founded upon a discovery or invention which was completed while in the other case there was only progress, however near that progress may have approximated to the end in view. The law requires not conjecture, but certainty. If the question relate to a machine, the conception must have been clothed in substantial forms which demonstrate at once its practical efficacy and utility. The prior knowledge and use by a single person is sufficient. The number is immaterial. Until his work is done, the inventor has given nothing to the public."

Or, as said by Mr. Justice Woods in Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017:

"The burden of proof is upon the defendants to establish this defense; for the grant of letters patent is prima facie evidence that the patentee is the first inventor of the device described in the letters patent and of its novelty. Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952; Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939. Not only is the burden of proof to make good this defense upon the party setting it up, but it has been held that 'every reasonable doubt should be resolved against him.' Coffin v. Ogden, 18 Wall. 120, 21 L. Ed. 821; Washburn v. Gould, 3 Story, 122, Fed. Cas. No. 17,214."

Being of the opinion, as I am, that no prior combination of parts shown by any patent or working implement in the record before the court made the backward inclination of the plow disc from a vertical plane an essential element of its construction and successful operation, and that the Hardy patent not only does this, but in so doing for the first time in all the history of the art of plowing by means of rotary disc plows Hardy arrived at the true solution of the many difficult problems presented in the successful accomplishment of one of the most important businesses of life, I am forced to the conclusion the defense of anticipation is not made out, and cannot be sustained.

It follows the exceptions to the report of the master must be overruled. A decree will enter granting the injunction prayed against further infringement of claim 2 of the Hardy patent, and for the usual accounting of profits derived and damages sustained by reason of the infringement charged against defendants, now parties to the record.