DANIEL O'DONNELL, Inc., et al. v. RISCAL MFG. CO. et al.

(District Court, S. D. Iowa, C. D. September 21, 1915.)

1. PATENTS ⊕➝328—INFRINGEMENT—SPARK GAP.

The Knorr patent, No. 1,111,963, for a spark gap to be mounted on the spark plug of an internal combustion engine, *held* infringed; its validity being conceded.

2. PATENTS ⊕➝245—INFRINGEMENT—IMMATERIAL CHANGES.

Infringement is not avoided by adding to a patented device a simple contrivance to strengthen a part, or by a change of form or use of a different material, where neither affects the functions performed.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 386; Dec. Dig. ⊕➝245.]

In Equity. Suit by Daniel O'Donnell, Incorporated, and the Notamiss Spark Gap Company against the Riscal Manufacturing Company, a partnership composed of August Salm and John H. Richter, August Salm, John H. Richter, and George R. Meissner. On final hearing. Decree for complainants.

Orwig & Bair, of Des Moines, Iowa, for complainants.
Roe & Roe, of Des Moines, Iowa, for defendant.

WADE, District Judge. The complainants charge defendants with infringement of United States letters patent No. 1,111,963, for an improvement in spark gaps, issued to Gottlieb Knorr, September 29, 1914. The invention is designed to be mounted on a spark plug of an internal combustion engine. The art is not new. The patent is a combination of known elements. The validity of the patent is not denied, and the sole question relating to the patent is whether the defendants infringe. There is also presented the question of unfair competition in trade, arising out of the use of the words "Notamiss" and "Nevermiss," as applied to spark gaps.

[1] Observing the structure described in the patent in suit, we find a cylindrical shell about an inch long, formed of a glass cylinder; one end being closed by a metal cap, the other end being formed by a flange upon the cylindrical body of insulating material inclosed within the glass cylinder. In each end there is a hole which admits the small threaded metal electrodes which pass into the body of insulating material inclosed in the cylinder. These metal rods also form exterior means of attachment to the spark plug and to the conducting wire. The complainants, in manufacture, have varied this construction by eliminating the flange upon the end of the inclosed cylindrical body, and have formed both ends of metal caps. The same construction has been used by the defendants, and it is the contention of the defendants that this avoids infringement, and that the complainants themselves are not manufacturing the article for which the patent was issued.

This is the first and principal question to be determined. In behalf of the complainants it is contended that the substitution of a metal cap for the flange is merely the use of a mechanical equivalent, and that

the use thereof by the defendants, with the other elements discribed in the patent in suit, constitutes an infringement. It is contended by defendants that the patent in suit, being a combination patent of well-known elements, is held strictly to the form described, and is not entitled to protection against mechanical equivalents; but I think the patent comes fairly within that class described by Justice Sanborn in National Hollow Brake Beam Company v. Interchangeable Brake Beam Co., 106 Fed. 693, 45 C. C. A. 544, in the following language:

"But the great majority of patents falls between these two extremes. They are neither for pioneer inventions nor for improvements so slight as to be almost immaterial. While they do not evidence the first or the last step in the progress of the art to which they relate, they often mark signal advances and protect useful improvements. The doctrine of mechanical equivalents conditions the construction of all these patents, and in determining questions concerning them the breadth of the signification of the term is proportioned in each case to the character of the advance or invention evidenced by the patent under consideration, and is so interpreted by the courts as to protect the inventor against piracy and the public against unauthorized monopoly [citing cases]. The doctrine of mechanical equivalents is governed by the same rules and has the same application when the infringement of a patent for a combination is in question as when the issue is over the infringement of a patent for any other invention [citing cases]. Mere changes of the form of a device or of some of the mechanical elements of a combination secured by patent will not avoid infringement, where the principle or mode of operation is adopted, unless the form of the machine or of the elements changed is the distinguishing characteristic of the invention."

The flange described in the patent in suit served no function, except as a cap for the end of the hollow cylindrical body. The substitution therefore of a metal cap is to my mind clearly the substitution of a mechanical equivalent, in so far as the same forms a closure or cover for the end of the glass cylinder. It involves no invention to substitute the one for the other.

[2] It is contended by counsel that the metal cap substituted for the flange possesses the additional function of a clamp holding the ends of the inclosed cylindrical body in case the same be split. There is no proof sustaining this claim. The metal cap does not fit closely around the edges of the inclosed cylindrical body. It fits around the glass cylinder, and the glass cylinder fits loosely over the cylindrical body, so that, in case it splits, it would be the glass cylinder which would hold it together, if anything; and if the cylinder should break, the space between the flange of the metal cap and the inclosed cylinder is so great that it could not possess the power of holding the body together. Even if it had such function, it would be a simple, well-known device which any workman would think of applying for such purpose, and it cannot be held that a complete patented device can be taken by an unauthorized and unlicensed person, and, by adding somewhere a well-known simple contrivance to strengthen some part thereof, acquire the right to the use of the patented article, and avoid infringement thereof.

Taking the spark gap manufactured by the defendants, and the spark gap described in the patent in suit:

"There is no difference in the mode of operation or in the result of the operation of the two devices. They operate on the same principle and in the same way and produce the same results."

This quotation is from the opinion of Sanborn, J., in the National Hollow Brake Beam Case, supra. He adds the following:

"The only difference between them is in the form of the caps and in the devices used to prevent these caps from rotating on the brake beams and brake heads. Can the appellee take the principle of the appellant's combination, the only valuable thing Hein invented, every condition that distinguishes their brake beam from the inferior devices it supplanted, and then escape liability by this slight change of the form of one of its elements?"

This question is answered in the negative. The metal cap performing the same function as the flange, even if it performed an additional function, it would not authorize defendants to absorb the entire patent granted to Knorr, and deprive him of the rights conferred by the government. Walker on Patents (4th Ed.) page 309.

In the recent case of Smart v. Wright, 227 Fed. 84, —— C. C. A. ——, decided by the Court of Appeals of the Eighth Circuit, September term, 1915, the court quotes with approval the following pertinent language from Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935:

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue; the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result. Nor is it safe to give much heed to the fact that the corresponding device in two machines organized to accomplish the same result is different in shape or form the one from the other, as it is necessary in every such investigation to look at the mode of operation or the way the device works, and at the result, as well as at the means by which the result is attained. Inquiries of this kind are often attended with difficulty; but if special attention is given to such portions of a given device as really does the work, so as not to give undue importance to other parts of the same which are only used as a convenient mode of constructing the entire device, the difficulty attending the investigation will be greatly diminished, if not entirely overcome. Cahoon v. Ring, 1 Cliff. 620 [Fed. Cas. No. 2292]."

I am compelled to hold that the substitution of a metal cap for the flange does not avoid infringement.

The contention that the use of "translucent" material for "transparent" material to form the hollow cylindrical body avoids infringement cannot be sustained. The functions of both are the same. There is no pretense that one has advantage over the other, and, if advantage did exist, it is clearly an equivalent which any shopman would supply.

It is seriously contended that the substitution of a fiber body made of four pieces for the cylindrical body described in the patent in suit avoids infringement. The functions of the fiber cylinder and the cylindrical body formed of four pieces are exactly the same. The only difference is in the size and form of the opening through which the spark may be observed as it passes between the terminals. The form adopted by defendants is different from the form described in the patent and the

form used by complainants in manufacture; but a mere change in the form which does not affect the functions performed—does not avoid infringement. It is apparent that the form used by defendants may have advantages over the form used by the complainants; but the change in form and the additional advantages are simply an extension of the principle and function inherent in complainants' device, which extension involves no inventive genius.

The patent in suit contemplates "a transverse opening extending through it." In manufacture, complainants use a round hole; but the patent does not limit or describe the form of the opening or its size. The purpose of the opening being to enable an observation to be made, the patent certainly contemplates that such opening may be used as will serve its purpose most effectually. It may be round or square, large or small. The cylinder may be so cut away as to leave but the form of two standards, as is used by the defendants, without departing from the language of the patent.

It being admitted that this patent is valid, it must be apparent that the cylinder used by defendants is clearly an infringement. The fact that a round hole is indicated in the specifications cannot be held to limit the words used in the claims approved by the Patent Office. Other slight differences in structure cannot be held to avoid infringement.

"One who appropriates a new and valuable patented combination cannot escape infringement by uniting or operating its elements by means of common mechanical devices which differ from those which are pointed out for that purpose, but which are not claimed in the patent." National Hollow Brake Beam Co., supra; Deering v. Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153; City of Boston v. Allen, 91 Fed. 248, 33 C. C. A. 485; Schroeder v. Brammer (C. C.) 98 Fed. 880.

In the attempt to evade complainants' patent, defendants have clearly invaded it. Complainants are entitled to an injunction as prayed, and to an accounting, if desired.

### Unfair Competition in Trade.

Complainants have employed the trade-name "Notamiss" in its sale of spark gaps. The defendant Meissner has employed the trade-name "Nevermiss." It is not disputed that the names for trade purposes are so much alike that their use would constitute unfair competition. The sole question involved is, which is entitled to the use of the name, and this depends upon which party first established a trade reputation or good will in the manufacture and sale of spark gaps under one or the other of these names.

Without reviewing the evidence, it is sufficient to say that I am convinced that in equity the complainants are entitled to the use of the name employed by them, and that the defendant Meissner is not entitled to use the trade-name "Nevermiss."

A decree will be prepared by counsel for complainants and submitted to counsel for defendants, who will have five days in which to file objections thereto, and the matter can then be submitted to the court for settlement, if agreement is not had. Such decree will reserve exceptions to the rulings of the court as expressed in the decree.